UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Capitol Park Limited Dividend Housing Association, | ) ) ) | CASE NO. 04 CV 1408 |
| Plaintiff, | ) ) | JUDGE PATRICIA A. GAUGHAN |
| vs. | ) ) | |
| Alphonso Jackson, et al., | ) ) | **Memorandum of Opinion and Order** |
| Defendants. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Application for a Temporary Restraining Order and Motion for Preliminary Injunction (Doc. 23). Also before the Court are the Motion for Summary Judgment on Behalf of Millennia Housing Management (Doc. 27) and Plaintiff's Cross-Motion for Partial Summary Judgment (Doc. 31). This case arises out of the pending foreclosure sale of plaintiff's building instituted by defendant HUD. For the reasons that follow, plaintiff's motions are DENIED and Millennia's motion is GRANTED.

**FACTS**

1

Plaintiff, Capitol Park Limited Dividend Housing Association (hereafter "Capitol") filed this lawsuit against defendants, Millennia Housing Management Limited (hereafter "Millennia") and Alphonso Jackson, Secretary U.S. Department of Housing and Urban Development (hereafter "HUD") alleging wrongdoing in connection with federally subsidized housing.

Capitol owns an apartment building with 98 units in Lansing, Michigan. The building is known as "The Porter." In 1981, Capitol entered into a regulatory agreement with HUD pursuant to Section 221(d)(4) in which HUD agreed to insure a mortgage in the amount of $4,051,200. In addition, pursuant to a Housing Assistance Program Agreement ("HAP"), HUD agreed to subsidize a portion of the rent. In exchange, Capitol agreed to operate the Porter as Section 8 housing. Subject to certain income restrictions, the Porter is open to individuals over the age of 62, as well as handicapped individuals regardless of age. Beginning in 1996, Millennia began operating the Porter and, according to plaintiff, only disabled individuals have become tenants at the Porter since that time.

In 2002, Capitol and HUD commenced discussions about renewing the regulatory agreement and the HAP. According to Capitol, HUD indicated that the Porter was to become part of HUD's Mark to Market Program. Under this program, rent at the Porter would be reduced in order to more adequately reflect current market prices in Lansing. In exchange, HUD agreed to adjust the underlying mortgage obligation to compensate for the reduction in rental income. Regardless of whether Capitol agreed to the renegotiation terms, the rents would be reduced.

Plaintiff alleges that in 2002, HUD and Millennia were "causing" the Porter to be occupied primarily by disabled individuals who were less than 62 years old. According to

2

Capitol, HUD required that an additional 10 units be set aside for the disabled. Capitol believed that this practice resulted in the illegal "warehousing" of disabled individuals. As a result of this conduct, Capitol refused to accept the renewal offer made by HUD. The rents were subsequently reduced and Capitol was unable to make the mortgage payments. Thereafter, HUD, as insurer, paid off the mortgage and has instituted foreclosure proceedings. The foreclosure sale is scheduled to take place prior to the conclusion of this litigation.[1]

Plaintiff moves for a temporary restraining order and preliminary injunction. HUD opposes plaintiff's motion. Defendant Millennia moves for summary judgment, which plaintiff opposes and plaintiff cross-moves for summary judgment, which Millennia opposes. The Court will address each motion in turn.

    1.    Plaintiff's Motion

**Standard of Review**

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions.

When ruling on a motion for a temporary restraining order or preliminary injunction, a district court must consider and balance four factors: (1) whether the movant has a strong or substantial likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the relief requested; (3) whether granting the relief requested will cause substantial harm to others; and (4) whether the public interest will be served by granted the relief requested. *See Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999); *Schenck*

---

[1] Plaintiff repeatedly points out that HUD refused to accept the resignation of two of its three general partners. The relevance of this, however, is not expressly made clear by the plaintiff.

*v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997); *J.L. Spoons, Inc. v. O'Connor*, 190 F.R.D. 433, 437-438 (N.D. Ohio 1999); *Crews v. Radio 1330, Inc.*, 435 F.Supp. 1002, 1005 (N.D. Ohio 1977).

A district court must make specific findings concerning each of these factors, unless analysis of fewer factors is dispositive of the issue. *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). However, not all the factors need be fully established for a temporary restraining order or injunction to be proper. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). No one factor is a prerequisite to relief; rather, they should be balanced. *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). While none of the factors are given controlling weight, a preliminary injunction should not be issued where there is no likelihood of success on the merits. *Michigan State AFL-CIO*, 103 F.3d at 1249. Where the court concludes that there is no likelihood of success on the merits, it need not address the other three factors. *Id*.

### **Discussion**

A.  Likelihood of success on the merits

Plaintiff argues that it will likely succeed on the merits because defendants' actions of segregating handicapped individuals into the Porter violate federal law. According to Capitol, the number of disabled residents violates the Development Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001, et seq. Plaintiff cites no specific provision of the Act and, instead, cites only to the Congressional purpose and "definitions" sections. Upon review of this statute, the Court finds that plaintiff has failed to establish a likelihood of success on the merits because the statute is inapplicable to the facts alleged in this case. Specifically, the Act provides

4

a mechanism whereby states can receive funding in order to provide certain programs to the disabled through a state sponsored system. The state system then has the authority to, among other things, pursue legal action on behalf of disabled individuals. See e.g., 42 U.S.C. § 15403. The Act simply has no bearing on a dispute between a property owner and HUD.

Plaintiff also argues that HUD's actions violate the Fair Housing Amendments Act, 42 U.S.C. § 3604(f), which provides in relevant part[2],

> ...[I]t shall be unlawful--
>
>> (f)(1) To discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of--
>>
>>> (A) that buyer or renter

Plaintiff argues that, in addition to making it unlawful to refuse to rent to a disabled individual, this provision also prohibits the segregation of disabled individuals. According to plaintiff, the disproportionate number of disabled individuals residing at the Porter amounts to a violation of the Fair Housing Amendments Act. In support of its position, plaintiff relies on *Olmstead v. Zimring*, 527 U.S. 581 (1999) and *Familystyle of St. Paul, Inc. v. City of St. Paul*,

---

[2] Plaintiff further claims that HUD's actions violate the Rehabilitation Act and the American with Disabilities Act. Plaintiff cites no specific provision of either Act, other than the "findings" provision of the ADA. Instead, plaintiff argues in passing that these Acts prevent "segregation" of the disabled. Absent any argument from plaintiff, the Court cannot say that plaintiff has demonstrated success on the merits under either statute. Plaintiff also claims that certain requirements set forth in the Code of Federal Regulations have been violated by the acceptance of a large number of disabled tenants at the Porter. These regulations, however, do not afford a private right of action. *See, e.g.*, *Three Rivers Center for Independent Living, Inc. v. Housing Authority of the City of Pittsburgh*, 382 F.3d 412 (3rd Cir. 2004).

728 F.Supp. 1396 (D. Minn. 1990).  The Court has thoroughly reviewed both citations and finds neither applicable to this case.  In *Olmstead*, disabled individuals who were deemed capable of living outside of an institutional setting by the state's physicians brought an action against the state seeking placement in a community facility.  The Supreme Court held that disabled individuals have a right to community placement, as opposed to institutionalized care, provided the state physician has determined that community placement is appropriate and can be reasonably accommodated.   Although the Court in *Olmstead* recognized the importance of preventing unjustified "segregation" of disabled individuals, the holding of the case is inapplicable to the facts alleged by plaintiff.  Here, plaintiff is effectively asking this Court to prevent disabled individuals who want to live at the Porter from occupying vacant units because "too many" are already living at that location.[3]  The Court finds this request to be drastically different from the forcible segregation at issue in *Olmstead*.

Similarly, the Court finds that *Familystyle* does not assist plaintiff in this case.  In *Familystyle*, a developer brought an action challenging a zoning ordinance that limited the number of facilities designed to house retarded and/or mentally ill persons within a particular geographic location.  The developer argued that the ordinance violated the Fair Housing Act because it discriminated against disabled individuals by limiting their choice of residency.  The district court concluded that the ordinance had the discriminatory effect of making housing

---

[3]  Plaintiff attempts to claim that HUD is intentionally "setting aside" the Porter for use by only disabled individuals, but fails to present any admissible evidence supporting its claim.  Although plaintiff offers an affidavit from Gibbons, a general partner in plaintiff, in which he avers that someone at HUD told him that the Porter was to be a "set aside" for the disabled, Gibbons's affidavit constitutes inadmissible hearsay and will not be considered by the Court.

unavailable for the disabled. Nonetheless, the court accepted the state's argument that the statute was narrowly tailored to promote a compelling government interest, i.e., dispersal and integration of the mentally disabled. Nothing in *Familystyle*, however, *requires* a limitation on the housing options for the disabled. To the contrary, *Familystyle* suggests that such a limitation would only stand if it were narrowly tailored. In this case, plaintiff essentially asks that this Court impose a limitation on the number of disabled individuals that may occupy the Porter. The Court finds that *Familystyle* does not mandate such an imposition.

Plaintiff also argues that the composition of the Porter violates the Housing and Community Development Act ("HCDA"). Specifically, the HCDA permits the owner of Section 8 housing to give a residency preference to elderly families, provided at least a portion of the units in the complex is set aside for disabled families who are neither elderly nor near-elderly. 42 U.S.C. §§ 13611, 13612. Specifically, 42 U.S.C. § 13612 (b) provides that the number of units reserved may not be less than the lesser of–

> (1) the number of units equivalent to the higher of–
>
>> (A) the percentage of units in the project that were occupied by such disabled families upon October 28, 1992; or
>>
>> (B) the percentage of units in the project that were occupied by such families upon January 1, 1992; or
>
> (2) ten percent of the number of units in the project[4].

---

[4]   Although initially plaintiff suggests that this provision somehow "caps" the number of disabled tenants that may be housed at the Porter, plaintiff appears to have changed its position in its reply brief. *See*, Reply Brief at 2-3 (recognizing that the legislative history reveals that the ten percent reserve should not be considered a ceiling). Plaintiff further cites to a provision in the Regulatory Agreement requiring approval from the Secretary of

In the event there is an insufficient number of elderly applicants, the owner may give preference to disabled families who are "near elderly.[5]" 42 U.S.C. § 13613(a). If individuals falling within these preferences have not applied for housing, the owner may make units generally available for other eligible occupants. 42 U.S.C. § 13614. According to plaintiff, a report to the Senate Subcommittee on Housing, which contains a section by section analysis of the HCDA, indicates that the statute prohibits segregation of the disabled. *See*, H.R. No. 102-760 (1992), *reprinted* in 1992 U.S.C.C.A.N. 3281, 3412-3415. The Report provides that the preferences section is intended to address competing issues between elderly and disabled populations. Prior to the enactment of the HCDA, disabled individuals regardless of age were included in the definition of "elderly." In response to concerns as to the growing population of disabled individuals residing alongside the elderly, the Committee recognized that certain public housing projects could be designated for "certain populations as long as the needs of all eligible populations are addressed to the extent practicable in an allocation plan." Id. at 3414.

The Court has reviewed the Report as well as the clear text in the statute and finds that plaintiff has failed to establish a likelihood of success on the merits on its HCDA claim. As an initial matter, it is unclear how HUD would bear any liability under this statute. The statute is

---

HUD in the event more than 25% of the units at the Porter were occupied by non-elderly tenants. Plaintiff, however, did not assert a claim for breach of the Regulatory Agreement against HUD, nor does plaintiff point to any statute that limits the number of units that may be leased to disabled tenants. Moreover, the Court has no way of knowing whether the Secretary approved of the composition at the Porter.

[5] "Near elderly" is defined as a person who is at least 50 years of age but below the age of 62. 42 U.S.C. § 1437a(b)(3)(G).

directed at enforcing preferences property *owners* may give to certain groups of qualifying individuals. Thus, to the extent the disabled are "illegally warehoused" at the Porter, any liability for such actions would seemingly fall at the feet of plaintiff for failing to take corrective action to desegregate its own facility. There is no evidence that HUD had anything to do with processing or accepting tenants at the Porter or that HUD in some way attempted to control plaintiff's actions in this regard. Although plaintiff makes conclusory allegations that the composition of the Porter is HUD's fault,[6] it fails to tie these allegations to any specific violation. In other words, there is no evidence that HUD caused the alleged problems at the Porter. As such, plaintiff has failed to establish a likelihood of success on the merits.

Moreover, the Court is not convinced that the HCDA limits the number of disabled individuals that may reside at the Porter. On its face, the statute permits an owner to give preference to elderly individuals, provided a *minimum* number of units is designated for disabled individuals. The statute does not speak in terms of a maximum number. The statute also provides that near-elderly disabled individuals may be given a preference if there is an insufficient number of elderly applicants. Once again, plaintiff fails to provide any evidence that these preferences were not adhered to at the Porter.

Plaintiff's brief points to several instances in which Congress articulated that integrating disabled individuals into society and limiting segregation to the extent possible is a laudable and worthwhile goal. Plaintiff, however, cannot base a claim for relief on these generalized

---

[6] For example, in its brief, plaintiff claims that HUD "supervised" the operation of the Porter and "refused to cooperate" when plaintiff "tried to set things right."

9

statements. Absent identification of a particular statutory or constitutional[7] violation, plaintiff has failed to demonstrate that it is likely to succeed on the merits in this case.[8]

   B.    Irreparable Harm

Plaintiff argues that it will suffer irreparable harm absent an injunction preventing the foreclosure sale because it will be deprived of its real estate interest. Plaintiff argues that there is no adequate remedy at law to compensate it for this loss.

HUD argues that the remedy requested by plaintiff is unrelated to the alleged harm. According to HUD, even assuming it engaged in discriminatory conduct at the Porter, plaintiff had no right to cease making its mortgage payments to the third-party lender. Instead, plaintiff should have instituted legal action against HUD.

Upon review of the parties' arguments, the Court agrees with HUD. Although loss of

---

[7] Plaintiff does not allege a constitutional violation with regard to the alleged discrimination. The only constitutional issue plaintiff raises is contained in count three, which purports to assert a takings claim.

[8] In a brief entitled "Federal Defendant's Replies to Plaintiff's Cross-Motion for Summary Judgment and Memorandum in Support of Preliminary Injunction" HUD asks in passing that this case be "dismissed" at plaintiff's costs. In support of its request, HUD argues that plaintiff failed to establish an applicable waiver of sovereign immunity and also failed to state a claim for which relief may be granted. HUD further argues for the first time that plaintiff lacks standing to assert its claims against HUD. These arguments were raised for the first time in a reply brief and are in no way responsive to the arguments made by plaintiff in its request for preliminary relief. Because of the pending foreclosure sale, plaintiff will not have a meaningful opportunity to respond to these complex issues. As such, the Court will not consider HUD's arguments at this time. Moreover, HUD did not present these issues by way of motion and, accordingly, HUD's "request" for dismissal in a "Replies Brief" is DENIED.

property through foreclosure may constitute irreparable harm in many circumstances, the alleged harm in this case was not a result of HUD's alleged actions. Plaintiff presents no evidence, nor does it even argue, that the alleged discrimination somehow caused plaintiff financial difficulties. There is no evidence that disabled individuals pay less in rent than elderly individuals or that any of the units were unoccupied. Rather, plaintiff argues that it refused to renegotiate the Regulatory Agreement because of the current state of affairs at the Porter. Plaintiff chose this course of action knowing that the rents would be reduced regardless of whether it agreed to restructure the mortgage. The primary problem with plaintiff's argument is that the mortgage was due and payable to a third party, who is not alleged to have taken part in the discrimination. Accordingly, plaintiff had no justification for failing to pay its mortgage. Moreover, it appears to the Court that additional reasons other than the alleged discriminatory conduct contributed to plaintiff's decision not to renegotiate the mortgage. For example, Gibbons testified that one of the reasons he was not willing to participate in the Mark to Market program was because HUD would not permit a prepayment clause. (Gibbons Aff. ¶ 14)[9]. Accordingly, plaintiff has failed to establish that irreparable harm as a result of the alleged wrongdoing will occur absent preliminary relief.

    C.    Substantial harm to others/Public interest

---

[9] Although not argued by defendants, it appears to the Court that Gibbons may not be entirely altruistic with regard to his concern about the rights of the handicapped individuals residing at the Porter. Upon review of his deposition, it appears that Gibbons would like to have the option to find an alternative use for the property, including converting it to a hotel. The difficulty associated with finding an alternative use is exacerbated by the relatively high number of handicapped tenants. (Gibbons Dep. at 110).

The Court finds that these factors neither favor nor disfavor the granting of preliminary injunctive relief.

**Conclusion**

For the foregoing reasons, the Court finds that plaintiff is not entitled to either a temporary restraining order or a preliminary junction.

2.  Millennia's Motion for Summary Judgment/Plaintiff's Cross-Motion for Summary Judgment

**Standard of Review**

In accordance with Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323. A fact is material only if its resolution might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party pursuant to Federal Rule of Civil Procedure 56(e), which provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the

12

> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial. If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

In ruling upon the motion, the court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *United States v. Hodges X-Ray, Inc.*, 759 F.2d 557, 562 (6th Cir. 1985). However, summary judgment should be granted if the party bearing the burden of proof at trial does not establish an essential element of its case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. 317).

**Discussion**

In Count One, plaintiff alleges a claim for "injunctive relief, desegregation of the Porter." According to plaintiff, the Porter is comprised of predominantly disabled tenants. Plaintiff alleges that this constitutes illegal segregation of the disabled. Specifically, plaintiff alleges that defendant's action of giving preference to disabled individuals violates various federal statutes.

Plaintiff also alleges that defendant breached the Management Agreement by allowing the Porter to become occupied primarily by disabled tenants.[10]

Defendant argues that plaintiff's claims fail because the Porter has always been operated in full compliance with all federal laws. According to defendant, many of the statutes relied on

---

[10] Count four is captioned "breach of duty." In its brief defendant argued that the count fails regardless of whether it is construed to assert a claim for negligence or breach of contract. In opposition, plaintiff makes clear that it is not asserting a claim for negligence in count four. Accordingly, the Court will address only the breach of contract aspect of the claim.

13

by plaintiff in its complaint do not afford private causes of action. Defendant further argues that the American with Disabilities Act does not apply to residential facilities. Defendant claims that the Rehabilitation Act is inapplicable. Defendant also argues that plaintiff lacks standing to assert certain federal claims on which it purports to rely. Defendant further argues that it is entitled to summary judgment on count four because plaintiff can point to no specific term contained in the Management Agreement that defendant breached.

In response, plaintiff indicates that it is not "seek[ing] to enforce the [federal statutes] per se, but rather it is Millennia's violation of the statutes that constitutes a violation of its contractual obligations to [plaintiff]." (Brief in Opp. at 7). In addition, in opposition to defendant's arguments concerning standing as to certain federal statutes, plaintiff claims only that it "has standing to address the contract violations by [defendant]...." (Brief in Opp. at 2). Furthermore, plaintiff offers absolutely no opposition to defendant's various arguments vis à vis specific federal statutes.  For example, defendant argues that plaintiff cannot seek relief under the Cranston-Gonzales Act of 1990 or any HUD regulation because these provisions do not afford a private right of action. Plaintiff offers no legal argument in opposition to this and similar arguments presented by defendant.[11] Based on a complete and thorough reading of plaintiff's brief in opposition, the Court concludes that plaintiff is not seeking relief from Millennia under any particular federal statute, except to the extent a violation of a particular statute also amounts to a breach of the Management Agreement.

---

[11] Plaintiff "incorporates by reference" the legal arguments presented in its motion for preliminary injunction.  That brief, however, does not address in any fashion many of the arguments presented by Millennia.

Defendant argues that plaintiff's claim for breach of contract fails because it did not provide defendant with notice of breach as required by the agreement. Plaintiff argues that it discussed the issue of segregation with defendant on numerous occasions, both verbally and in writing. Upon review of the notice provision, the Court finds that defendant is not entitled to summary judgment as a result of plaintiff's alleged failure to provide notice of default. The notice provision provides as follows,

> 25. Term of Agreement. This Agreement shall be in effect for a period of ten (10) years...Subject, however, to the following conditions.
>
> ***
>
> b. This Agreement may be terminated by Owner upon thirty (30) days advance written notice if (i) Agent is in material default under this Agreement and such default is not cured by Agent within forty-five (45) days of Agent's receipt of Owner's written notice of default...

On its face, this provision addresses the prerequisites that plaintiff must follow in order to *terminate* the Agreement. It does not place any burden on plaintiff should plaintiff seek to enforce the terms of the Agreement or recover damages for an alleged breach without also seeking to terminate the parties' relationship. Here, plaintiff is not seeking termination and, accordingly, this provision is inapplicable to this dispute.

Thus, the Court finds that the only remaining question is whether Millennia breached the Management Agreement by permitting the tenancy at the Porter to be comprised primarily by disabled individuals. In support of its argument, plaintiff points to the following provision,

> Nondiscrimination. In the performance of its obligations under the Agreement, the Agent will comply with the provisions of any Federal, State, or Local Law prohibiting discrimination in housing on the grounds of race, color, sex, creed or national origin, as well as all requirements imposed by or pursuant to the Regulations of the Secretary.

(Agreement at ¶ 23).

15

Other than referring the Court to its motion for preliminary injunction, plaintiff offers no explanation as to the manner in which defendant is alleged to have violated this provision. Defendant points out that this provision does not prohibit discrimination based on age or disability because, unlike other protected classes, federal law expressly permits preferences based on age and/or disability in the context of federally funded housing.

Even assuming that this provision could be read to prohibit discrimination against the disabled, summary judgment in favor of defendant is nonetheless warranted. Millennia provides the affidavit of its vice-president, who avers that tenancy at the Porter is determined based on the express provisions of the HCDA. Specifically, he avers that the Porter sets aside 10% of its units for disabled families who are neither elderly nor near-elderly. (Pintner Aff. ¶ 11). All other vacancies are filled based on the preferences set forth in the HCDA. (Id.) According to defendant, the demographics at the Porter are a function of the lack of elderly applicants, not illegal discrimination.

Plaintiff provides no evidence in response, other than the vague assertion in Gibbons's affidavit that the makeup of the Porter is "predominantly" or "overwhelmingly" comprised of disabled individuals. There is no evidence supporting Gibbons's opinion as to the precise composition of the Porter. For example, Gibbons's opinion fails to indicate whether the disabled tenants also qualify as "elderly" or, for that matter, "near-elderly." As such, no reasonable juror could conclude, based on the evidence presented by plaintiff, that Millennia violated the express provisions of the HCDA.

Moreover, plaintiff offers no meaningful response to Millennia's legal arguments. Instead, plaintiff opted to "incorporate" the legal analysis set forth in its motion for preliminary

16

injunction. The legal section set forth in that brief, however, fails to address most of the arguments raised by Millennia. The Court finds that plaintiff has failed to point to any specific statutory provision that would require Millennia to either halt accepting applications from disabled tenants or evict disabled tenant currently residing at the Porter. In addition, plaintiff fails to present any evidence indicating what portion of disabled tenants at the Porter were admitted by Millennia.[12] Nor does plaintiff indicate that it instructed Millennia to relocate tenants or that Millennia refused to comply with any such request. Plaintiff indicates that it instructed Millennia to stop accepting applications in 2002 and that Millennia agreed to plaintiff's request. There is no evidence before the Court indicating that Millennia continued to accept disabled tenants after that point in time.[13] Thus, the Court finds that there is insufficient evidence from which a jury could conclude that Millennia breached the management agreement as a result of the number of disabled tenants residing at the Porter.

**CONCLUSION**

For the foregoing reasons, Plaintiff's Application for a Temporary Restraining Order and Motion for Preliminary Injunction is DENIED. Plaintiff's Cross-Motion for Partial Summary Judgment is also DENIED. The Motion for Summary Judgment on Behalf of Millennia Housing

---

[12] It appears to the Court that the occupancy of the Porter has included a large number of disabled tenants for a long period of time. Plaintiff claims that the prior management company also admitted too many disabled tenants. (Gibbons Dep. at 39-40). Thus, it is impossible to ascertain which tenants were in fact admitted by Millennia.

[13] Although Millennia in all likelihood accepted tenants in the past two and a half years, it is incumbent upon plaintiff to provide evidence in support of its claim.

Management is GRANTED.

    IT IS SO ORDERED.


                        /s/ Patricia A. Gaughan
                        PATRICIA A. GAUGHAN
                        United States District Judge

Dated: 5/13/05